Chief Justice Robertson,
delivered the opinion of the court.
This is a suit in chancery, for land elaimed by the appellants, under a patent junior to that of the appellee, in virtue of an entry, alleged to be prior in date, and superior in equity, to the entry under which the appellee claims.
The appellants derived their title from Christopher. Singleton, to whom a grant was issued, in 1790, reciting a survey, made on the following entry: “27th May, 1780. Christopher Singleton, enters five hundred acres, on the Beech Fork, on the North side thereof, about three miles from the mouth of said fork, beginning at the mouth of a creek, and running up on both sides of said creek, for quantity.”
The entry of the appellee, has not been exhibited. A patent to Jacob Froman, under which the appellee claims, was issued in 1785.
:The land remained unoccupied, under either of these conflicting claims, until the appellants took *214 possession, about ;t year prior to the institution of att udion fif ejectment against them, by the appellee, in which he obtained a judgment, to enjoin which, this suit was brought.
As the limitation to a suit on tho legal right (to land) commences only with the adversary possession of the party to be sued, so the chancellor, will not permit that statute to bar an equitable right, when the legal right would be unaffected by the statute.
Until the elder patentee has entered an the land, claiming proprietorship, tho holder of an adverse equity, is not presumed to know that an elder grant has issued for the same land, or that the grantee will ever question or disturb his equitable, right.
The appellee admitted on the, record, that the, appellants held thodiUe of Singleton, by regular derivar tion.
The circuit court sustained the entry of Singleton, but dissolved the injunction, and dismissed the hi)!, on the ground that the equity of the appellants had been barred by lapse of lime.
Whether the decree be right or wrong, the reason assigned for it, is insufficient. The record does not shew when the action -of ejectment' was brought. But, were it admitted, that the appellants were not actually possessed of the land, sooner than one year antecedent to tho institution of this suit, their equity, if it could ever have been availing, could not have been-barred by time. More than twenty years had elapsed from the date of Jacob Froman’s patent, and instantly on the emanation of that grant, Singleton’s equity might have been asserted, by a suit in chancery. But, as the limitation to a suit, on the legal right, commences only with the adversary possession of the party to be sued, so the chancellor, who has adopted the slatuto of limitations, as far as reason and analogy allow, will not permit that statute to bar an equitable right, when the legal right would be unaffected by if.
U .til the elder patentee shall have entered on the land, claiming proprietorship, the bolder of an adverse equity, is not presumed to ivtiow, that an elder grant has been issued for the. samé land, or that the grantee will ever question or disturb Ids equitable right.
When neither party has been in the actual possession of land, claimed by each, the statute of limitations cannot ¡.ave barred the legal or equitable right of either. When possession has been held by the junior patentee alone, (as in this case) surely his right cannot have been affected by the statute of limitations. When the appellee obtained his judgment in ejectment, Im succeeded, merely because he held under tiie elder grant, and not because he had any right of entry, resulting from prior occupancy. And when *215 ever he attempted thus to enforce his legal fitie, the appellants had an equal right to resist that legal title, by asserting a superior equity.
wiíTñnTjTíieij the- elder patent* e nor the {^'(wíio'bó'ds an equity by' vírate <r his l'ntT’) heenin ¡u.ttt-oi theTanc?!* the statute of hmitatirns eauitablc right oi either.
According to the foregoing facts and view of tiie equitable consequences resulting from them, "the mere lapse of time, independents}' of the statute oi limitations, cannot affect the equity of the appellants; even, if in a possible case, lapse of time could Oar such an equity as stale, when the eider patentee had never been in the actual possession.
We concur with the circuit, court, in the opinion, that the entry should be admitted to be valid. The locative calls were not as certain and precise as they might have been, but, they were sufficiently so, to enable subsequent appropriators, to identify, without serious doubt or difficulty, the locality of the entry, The notoriety of the Beech Fork, at the date of the entry, is well established; and it clearly appears, that “Lick Creek.’1 which empties into the Beech Fork, about two miles above the mouth of the latter, and on which the entry was surveyed, is the only stream running into the Beech Fork, on the North side, within from seven to ten miles from the mouth of said Fork, which has ever been, or could, with propriety, ever he denominated a “erm'r.” This fact, if indisputable, should control the descriptive call, for distance', and, would identify the entry, with reasonable certainty. A small stream runs into the Beech Fot k on the North side, “abovi three miles” from its mouth; and from this fact alone, results the controversy, about the validity of the entry. But, it seems from the proof, that this, stream, called “Dry Rurif’ is not of sufficient magnitude to be entitled to tlie appellation of a creek, or to have ever been considered a creek, by a reasonable man, acquainted with the distinctive differences be* tween runs, brandies, creeks, and- rivers, it is dry during one half of the year, at least. . Its length does not exceed a mile; and its width, at its mouth, does not exceed four feet. Sometimes, in wet seasons, it is full of water, and near its mouth, cannot be forded, in consequence of the refinx of back water, from the Beech Fork. Sucha streamlet could not, as it scorns to this court, have been mistaken (especially at the date of Singleton’s entry) for the creek called for irv *216 thé entry. A subsequent locator, seeing “Lick Creek, at what, according to the proof, appeared to be about three miles from the mouth of the Beech Fork, and finding no other stream, except Dry Run, for several miles, could not have entertained a reasonable doubt, that “Lick Creek” was the creek intended by the entry. The cal! would have been more certain, if it had been for the fir at creek, instead of “a creek about three miles ” Sic. But, the entry, as made, could not, witu propriety, be deemed vague or uncertain. It furnished data for ascertaining, withou* perplexity, the land intended to be appropriated by it. Arid vye will not require, and should not expect, the utmost precision, in entries made by the pioneers of .the wilderness. All that should be exacted, is, that the like men may be furnished with reasonable means for ascertaining what land remained vacant. What would be reasonable certainty, would depend on the peculiar circumstances of each case. According to the circumstances characterizing the entry in this case, we are disposed to consider it valid.
When fio survey is exhibited in the case, the recital in the patent Mill be deem eel prima facie evidence of the fact, that a survey was made, and made as re-aited.
No survey has been exhibited. But, prima facie, the recital in the patent, must be deemed evidence of the fact, that a survey was made, and as rented.
Considering the calls in the patent, as designating the boundary of the original survey, as actually made, it must be admitted, that the entry and survey do not precisely correspond. The survey should have been, as it was, rectangular; but equal quantities of land should have been, ns they were not included on each side of the creek, as far as such equality was practicable. The two lines from the Beech Fork up the creek, should ho parallel to a line, describing the general course, of so much of the creek, as will be included by the survey.
The appellants are entitled to a decree for so much of the land, in controversy, as shall be embraced, both by the survey, as actually made, and by such an one, as would be conformable to the entry.
Wherefore, it is decreed and ordered, that the decree of the circuit court, he reversed, and that the ■cause fee remanded, with instructions to render a *217 decree in Favor of the appellants, according to this -°PÍnÍOn- ■
Chapeze, for appellants’^ Crittenden and Hardin, for appellee.